# EXHIBIT A

**07 C 7116**

**JUDGE LEFKOW**
**MAGISTRATE JUDGE COX**

# ABN AMRO FINANCIAL SERVICES, INC.

## Financial Consultant Agreement

_Douglas F Bryher_
**Financial Consultant Name**

# FINANCIAL CONSULTANT AGREEMENT

This agreement between you and ABN AMRO Financial Services, Inc., a Delaware corporation ("**AAFS**") sets forth the capacity in which you will serve AAFS and the terms and conditions that apply to your employment with AAFS ("**Agreement**").

1. Scope.

    (a) In return for your diligent performance under this Agreement, and subject to the terms of this Agreement, AAFS agrees to employ you in your capacity as an NASD-licensed and/or annuities-licensed financial consultant ("**Financial Consultant**"). Your duties are:

    (i) To execute purchases and sales of authorized investment products, including shares or units of certain registered open-end management companies and unit investment trusts, for customers of AAFS;

    (ii) In accordance with guidelines established by AAFS, to provide investment advice and recommendations with respect to investment products that are suitable for AAFS's customers and are in accordance with their investment goals, financial status, tax status or any other criteria used or considered to be reasonable by AAFS; and

    (iii) To render such other services as may be assigned to you from time to time by AAFS.

    (b) To the extent that you are appropriately licensed and authorized by AAFS to sell insurance products as agent, this Agreement will apply to such sales activity and your employment by AAFS as a licensed insurance specialist. In that case, to illustrate (but not limit) the general applicability of this Agreement to your insurance-related activities, references herein to investment products, sales, commissions, policies, Rules and licenses shall be deemed to also refer to insurance products, sales, commissions, policies, Rules and licenses.

    (c) Except for customers' orders in the ordinary course of business, you have no right to make any contracts or commitments for, or on behalf of, AAFS without first obtaining the written consent of AAFS.

    (d) AAFS has the sole and exclusive right to advise, instruct, supervise, direct and control you with respect to your employment as Financial Consultant under this Agreement and the services and duties to be performed by you as a Financial Consultant under this Agreement.

2. Compliance.

    (a) You agree that you will strictly adhere to all of the policies and procedures established by AAFS for the conduct of its Financial Consultants, which includes those set forth in AAFS's Registered Representative Compliance Manual. YOU ACKNOWLEDGE RECEIPT OF SUCH MANUAL. If for any reason you require a replacement copy of the Manual, contact AAFS, and a copy will be furnished to you. AAFS may ask for the return of your present copy.

    (b) You agree that you will strictly adhere to all applicable state and federal laws, rules, regulations, and guidelines, as well as those of any applicable self-regulatory organization (collectively, the "**Rules**"). You will at all times faithfully, industriously, and to the best of your ability perform all of the duties that may be required of you pursuant to this Agreement and you will use your best efforts to become, and/or remain a qualified Financial Consultant during the term of this Agreement. You will immediately notify your supervisory principal and the AAFS Compliance Officer of any customer complaint, whether written or verbal, and you will provide all relevant details concerning any such complaint.

    (c) You agree that you will strictly adhere to the Interagency Statement on Retail Sales of Nondeposit Investment Products, as amended (the "**Interagency Statement**"), as well as the policies and procedures of AAFS's affiliated banks implementing the Interagency Statement, copies of which AAFS will make available to you.

1

(d) You acknowledge that failure to strictly adhere to AAFS's policies, procedures, and rules (which includes those set forth in the Manual), the Rules, and the Interagency Statement by subject you to disciplinary action (including termination) by AAFS.

(e) You agree, during the term of this Agreement, not to solicit or sell any securities or other investment products on behalf of any other unaffiliated broker-dealer or insurance agency; not to sell any products other than those approved for sale by AAFS and for which you are properly licensed; and not to sell products outside the jurisdiction(s) in which you and AAFS are properly licensed. You further agree to obtain and maintain in good standing all federal, state, and self-regulatory organization licenses and registrations required for your activities as a Financial Consultant and to complete all applicable continuing education requirements on a timely basis.

3. Compensation.

(a) In full payment for your services under this Agreement, you will be compensated by the payment of commissions at a rate determined by AAFS from time to time, as further defined in this Agreement. A copy of the commission structure currently in effect is attached hereto as Exhibit A. AAFS reserves the right to unilaterally change the commission rates and/or system of compensation at any time in its sole discretion. Benefits will be provided to you in accordance with your eligibility under the ABN AMRO North America, Inc. benefit plans in effect from time to time. AAFS and/or ABN AMRO North America, Inc. reserves its right to unilaterally modify, amend, or cancel any of these benefit plans, with or without prior notice to you.

(b) You may be paid refundable, recoverable bi-monthly draws as advances against commissions earned in such amount and to the extent set forth in the AAFS commission structure then in effect. "Commissions earned" that are to be paid to you are defined as commissions on eligible sales, including trailers (if any), at the rate and on the products set forth in the commission structure then in effect, minus any draws previously paid to you that have not yet been recovered, minus all charge backs then outstanding. If you work on a sale with another Financial Consultant, AAFS reserves its right, exercised at its sole discretion, to allocate any commissions paid on that sale. While you are a current employee, commissions earned will be due in the month following the sale to the customer or when the commission is listed in the monthly commission report, whichever is later. Upon the termination of your employment, commissions earned that have not yet been paid shall be due to you ninety days after the date of termination of employment. You agree to pay AAFS for any draws that have not yet been recovered and any outstanding charge backs following the final payment of commissions earned. This payment shall be made by you within sixty (60) days of notification by AAFS that such amounts are due and owing.

(c) You will be provided with monthly commission reports. You are responsible for auditing these reports and to immediately notify AAFS of any errors therein. If you fail to notify AAFS in writing of any errors within thirty (30) days of the date that the report is mailed or otherwise provided to you, you will be deemed to have agreed with the accuracy of those reports and no further adjustments will be made based on any errors you may later assert. All notifications regarding commission disputes and monthly commission reports must be made in writing, with supporting documentation, to AAFS's headquarters in Chicago. Nothing contained herein in any way limits AAFS's right to correct errors and/or to account for charge backs at any time in determining commissions earned, whether or not these are correctly or otherwise set forth in a monthly commission report.

(d) AAFS will deduct all outstanding charge backs in calculating commissions earned by you. Charge backs will include, but will not necessarily be limited to, the loss to AAFS, including any related expenses and costs, when a customer incurs a loss or is otherwise damaged due to your act or omission that was negligent, in violation of AAFS's instructions or guidelines, or inconsistent with the terms of this Agreement, and AAFS, in its sole discretion, reimburses the customer for that loss. Charge backs shall also include, but will not necessarily be limited to, the amount of any previously paid commission when the commission was paid on a transaction that is later canceled, including but not limited to a transaction that is canceled because the product allows a specified time for reversal or the customer later challenges the suitability of the product, to the extent that AAFS has returned the compensation it

2

received in connection with the transaction. Charge backs shall also be made for any prior errors by AAFS in calculating commissions earned.

(e) You may not share any investment product sales compensation with others, including employees of AAFS's affiliated banks. Without advance written approval by AAFS, you may not compensate (whether by gift or otherwise) others for referrals or otherwise in connection with your investment product sales activities.

4. Confidentiality.

(a) During your employment with AAFS, you have had or will have access to confidential information concerning AAFS's business and its customers, including but not limited to information concerning the identities, addresses, telephone numbers, account numbers, personal information, financial information, and transactions of customers, as well as AAFS's marketing strategies and plans, goals, business methods, business prospects, computer software, research techniques and results, and other information that would be of value to competitors if they obtained this information (collectively, "Confidential Information"). You agree that AAFS has undertaken reasonable measures to maintain the secrecy of its Confidential Information and that during and after your employment you will take all reasonable steps necessary to maintain the information's secrecy, including ensuring that the Confidential Information is not disclosed and is maintained in a secure environment where it is protected from theft or inadvertent disclosure.

(b) You further agree not to, directly or indirectly, use or disclose any Confidential Information, either during or following the termination of your employment, except to the limited extent necessary to perform your job duties for AAFS, including only disclosing Confidential Information to other AAFS employees who have a "need to know" this information. These restrictions apply regardless of whether the Confidential Information is in printed, written, or electronic form, retained within your memory, or is compiled or created by you and regardless of when or how you learned the Confidential Information. These restrictions also apply to any use or disclosure, whether it is by verbal, written, electronic, or other means. You also agree that you will immediately inform your supervisor and your State Sales Manager of any unauthorized access, use or disclosure of AAFS' Confidential Information.

(c) Upon demand or the termination of this Agreement, you shall return all Confidential Information in whatever form is may exist, as well as any documents and data created or compiled by you containing that contains, is based upon, or derived from any Confidential Information, regardless of the source, location, or media on which this information is kept. In addition, you agree to not create any documents or data that contains, is derived from, or based upon Confidential Information after the termination of this Agreement.

5. Nonsolicitation.

(a) As part of your AAFS job duties, you have been or will be responsible for obtaining, maintaining, and developing business relationships in a professional and business-like manner with actual and prospective AAFS customers, including but not limited to brokerage customers, annuity customers serviced through insurance companies, and customers of AAFS affiliated banks that you learn of as a result of your employment (collectively, "Customers"). You agree that your relationships with Customers are undertaken solely as an agent of AAFS, on whose behalf the relationships are maintained. AAFS at all times retains the right, exercised at its sole discretion, to reassign any account or customer to any employee.

(b) Accordingly, you agree that for a period of one (1) year after the termination of your employment, regardless of the reason for termination, you will not, directly or indirectly, and whether as an employee, agent, representative, owner, contractor, partner, sole-proprietor, investor, consultant, or in any other capacity, do any of the following: (i) solicit, canvass, or accept orders or business of any kind relating to the products and/or services sold by, or that are substantially similar to those sold by, AAFS from any Customer that you serviced or learned of during your employment; (ii) induce or attempt to induce any Customer to patronize any business that is competitive with AAFS; (iii) request or advise any Customer to withdraw, curtail, or cancel the Customer's actual or prospective business

3

with AAFS; or (iv) otherwise initiate any securities or insurance related business contact, written or verbal, with any Customer. These restrictions shall not apply to those Customers agreed to by you and your State Sales Manager (provided that the names of these Customers are set forth in a writing signed by the State Sales Manager that directly refers to this agreement) or to Customers that are directly related to you, provided that you do not use any Confidential Information in servicing these Customers after the termination of your employment. You further agree that it is critical to AAFS's continued business and a reasonable restriction on your future employment that you not interfere with AAFS's Customer relationships upon the termination of your employment.

6. <u>Injunctive Relief</u>. You acknowledge that should you violate any of the provisions of Section 4 or Section 5, AAFS will suffer substantial harm and not have adequate remedy at law. Accordingly, you agree that: (a) AAFS may seek injunctive relief to restrain any such violation, whether threatened or actual; (b) such equitable relief may be sought in any court of competent jurisdiction, regardless of whether other issues (e.g., damages) are subject to arbitration; (c) any requirement for AAFS to post a bond in seeking such equitable relief is waived. This equitable remedy is cumulative and in addition to any other remedies available to AAFS under the law, including the right to obtain damages.

7. <u>Attorney's Fees & Costs</u>. In the event AAFS brings suit to enforce the terms of this Agreement, you agree to pay any fees or costs (including reasonable attorneys' fees and arbitration forum fees) AAFS incurs in enforcing the terms of this Agreement.

8. <u>Indemnification</u>. AAFS will indemnify, defend and hold you harmless from and against any loss, liability, damage, cost or expense (including any amounts paid in settlement, provided that AAFS will have approved such settlement), resulting from a demand, claim, lawsuit, action or proceeding relating to your employment as an Financial Consultant of AAFS under this Agreement, provided, that your conduct which was the subject of the demand, claim, lawsuit, action or proceeding did not constitute a breach of this Agreement and was not violative of any of the policies, procedures, Rules or reporting requirements specified in this Agreement; and provided further, that AAFS receives prompt written notice from you of any such demand, claim, lawsuit, action, or proceeding and complete authority and information required for the defense thereof. If any such action is brought against you, and you notify AAFS of the commencement thereof, as provided in this Section 8, AAFS will assume the defense of such action. AAFS will not be responsible for any legal costs or expenses incurred by you without AAFS's prior written consent, unless AAFS has failed to act timely in defense of such demand, claim, lawsuit, action or proceeding after prompt written notification by you.

9. <u>Waiver and Modification</u>. No waiver or modification of this Agreement will be valid unless in writing and duly executed by the party against whom enforcement is sought. Waiver by either party hereto of any breach or default by the other party of any of the terms and provisions of this Agreement will not operate as a waiver of any other breach or default, whether similar to or different from the breach or default waived.

10. <u>Severability</u>. All provisions and covenants contained herein are severable, and in the event that any one or more of them is held to be invalid, illegal or unenforceable in any respect by any court of competent jurisdiction, the validity, legality and enforceability of the remaining provisions and covenants contained herein will not in any way be affected thereby, and such provision or term shall be construed to effectuate its purposes to the fullest extent enforceable under applicable law.

11. <u>Entire Agreement</u>. This agreement contains the entire agreement and understanding of the parties with respect to the subject matter hereof, and no other representations, promises, agreements, or understandings regarding the subject matter hereof shall be of any force or effect unless in writing, executed by the party to be bound, and dated on or subsequent to the date hereof.

12. **<u>Arbitration</u>. The parties agree that all claims and controversies between them, including, but not limited to, claims of discrimination or sexual harassment; those involving any transaction; or the construction, performance, or breach of this of this Agreement, whether entered into prior, on, or subsequent to the date of this Agreement, shall be determined by arbitration. Any arbitration under this Agreement shall be conducted pursuant to the federal arbitration act and the laws of the State of Illinois, before the arbitration facilities provided by the National**

4

Association of Securities Dealers, Inc. In agreeing to arbitrate all claims and controversies, it is important that you understand the following:

- You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person, that is required to be arbitrated under the rules of the self-regulatory organizations with which you are registering. This means you are giving up the right to sue a member, customer, or another associated person in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
- A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated under NASD rules. Such a claim may be arbitrated at the NASD only if the parties have agreed to arbitrate it, either before or after the dispute arose. The rules of other arbitration forums may be different.
- Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.
- The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.
- The arbitrators do not have to explain the reason(s) for their award.
- The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.
- The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

Forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein. Moreover, nothing in this section shall be deemed a waiver of AAFS's rights to injunctive relief as provided for in Section 6 of this Agreement.

13. <u>Termination</u>.
    (a) You understand that your employment with AAFS is <u>at will</u>, and may be terminated by either you or AAFS at any time and for any reason, with or without prior notice.
    (b) The provisions of Section 3, Section 4, Section 5, and Section 12 of this Agreement will survive the term of this Agreement and be binding upon the parties thereafter to the extent specified.

14. <u>Governing Law</u>. This Agreement shall be deemed to have been made in the United States in the State of Illinois and shall be construed and enforced in accordance with, and the validity and performance hereof, shall be governed by the laws of the State of Illinois, without regard to the conflicts of laws principles thereof. You consent to the jurisdiction of the state and federal courts located in or for the State of Illinois in connection with any action or proceeding instituted relating to this agreement.

15. <u>Headings</u>. The headings used in this Agreement are for convenience only, shall not be deemed to constitute a part hereof, and shall not be deemed to limit, characterize, or in any way affect the provisions of this Agreement.

**YOU UNDERSTAND THAT THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE, WHICH IS LOCATED ON PAGE 4, IN SECTION 12. YOU SHOULD READ THAT CLAUSE NOW AND UNDERSTAND IT BEFORE SIGNING THIS AGREEMENT.**

ACKNOWLEDGED AND AGREED TO this ___3RD___ day of ___APRIL___, 20_03_:

_____        ABN AMRO Financial Services, Inc.
(Signature)

5

Social Security No.:         REDACTED                By: DOUGLAS F BRYMER

Telephone No.                                         Title: FINANCIAL CONSULTANT

Financial Consultant's Name and Address

DOUGLAS BRYMER
(Please Print)
1655 W. IRVING PARK RD #1105
CHICAGO, IL 60613

6

Exhibit A

# ABN-AMRO FINANCIAL SERVICES

## FINANCIAL CONSULTANTS COMPENSATION PLAN

- 100% of mutual funds and variable annuity revenues to grid (preferred vendors, VA's maximum to 6.5%)
- 100% of security and annuity trailers to grid
- 100% of insurance revenue to grid
- 100% Portfolio Manager I and II annual fee to grid, trailers begin in 5th quarter
- 100% of UIT revenue to grid (VK and Nuveen)
- 100% of equity and fixed income to grid
- Non-preferred vendors maximum: 3% unless commission is less than 3%, then 1% reduction
- 1035X revenue applied to grid when funds received by AAFS
- Fixed annuity commissions maximum of 4%
- Direct-to-Fund business permitted only on trades less than $1,000 unless 529 plan. Reps are paid when funds received by AAFS

- **ANNUAL GRID LEVELS:** *
  - 0 TO 125,000            22.5%
  - 125,001 TO 200,000      25%
  - 200,001 TO 300,000      28%
  - 300,001 TO 400,000      31%
  - 400,001 TO 500,000      33%
  - 500,001 & OVER          35%

*Retroactive to first dollar

- **ANNUAL BONUS SCHEDULE:**

  | PRODUCTION LEVEL | BONUS AMT. |
  |---|---|
  | 400,000 | 10,000 |
  | 500,000 | 20,000 |
  | 625,000 | 32,500 |
  | 750,000 | 50,000 |
  | 875,000 | 65,000 |
  | 1,000,000 | 100,000 |

Exhibit A

Financial Consultant must be employed with AAFS through 2/28 of the following year to be eligible to receive the annual bonus.

OR

The annual bonus will be paid on the second pay period of February (i.e. February 28th or 29th if leap year). You must be employed by AAFS on this payday to receive the annual bonus.

- **SALES ASSISTANT PROGRAM:**
  *Available to President's Council Members in Full Standing*

| Annual Revenue* $300,000 - $500,000 | AAFS pays 50% of the salary and 100% of the bonus |
| $500,000+ | AAFS pays 100% salary and bonus |

- **Unlicensed Sales Associate**          **Salary $27,500**
  *Not eligible for bonus*

- **Fully Licensed Sales Associate**      **Salary $32,500**
  *Eligible for 1% bonus if FC revenue (Gross Commissions plus Trailers) is $33,000 or greater/month. Maximum Monthly Bonus is $1,000*
  *(LBE Revenue NOT included)*

*Based on prior year's revenue