**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LaSALLE FINANCIAL SERVICES, INC., a Delaware corporation,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **No. 07 C 7116** |
| | ) | **Judge Lefkow** |
| **DOUGLAS BRYMER, DAVID SWANSON, and RYAN KIBILOSKI,** | ) ) ) | **Magistrate Judge Cox** |
| **Defendants.** | ) | |

## DEFENDANTS' ANSWER TO COMPLAINT

Defendants, Douglas Brymer, David Swanson, and Ryan Kibiloski, set forth their

Answer to Complaint as follows:

## NATURE OF THIS ACTION

1.  Defendants Brymer, Swanson, and Kibiloski are former LFS financial consultants who resigned from LFS on the same day to pursue jobs as financial consultants at one of LFS's competitors.  Prior to resigning from LFS, however, the Defendants stole confidential information about LFS's customers and then attempted to hide their actions by destroying and deleting files and other information belonging to LFS from LFS's computers.  Each of the Defendants is bound by legal and professional duties – including certain express agreements and applicable state and federal law – not to disclose or use confidential information and trade secrets belonging to LFS, and not to solicit LFS's customers after the Defendants' departed from LFS.  In blatant defiance of these duties, however, Defendants surreptitiously removed customer information – including downloading LFS's confidential computer files and trade secrets which included LFS customer lists and account data – and have subsequently used that data to, among other things, solicit existing LFS customers to move their accounts over to Defendants' new employer.  In an attempt to cover their tracks, and in contravention of the Computer Fraud and Abuse Act, Defendants employed software computer applications to "wipe" or delete and overwrite data on LFS's computers.

**ANSWER:**  Defendants admit the allegations of the first sentence of this

paragraph but deny the remaining allegations of this paragraph.

2.  Through this lawsuit, LFS seeks to immediately enjoin the Defendants, and anyone acting in concert with them, from:  (1) further deletions or destruction of any of LFS's

confidential information that Defendants have illicitly taken; (2) from the continued use and disclosure of that confidential information; and (3) from the continued solicitation of LFS's customers and diversion of LFS's customers' business away from LFS. Once the injunction has issued and the status quo preserved, this matter may be stayed against all defendants pending the outcome of an arbitration under the auspices of the Financial Industry Regulatory Authority ("FINRA"), which LFS is filing contemporaneously with this action.

**ANSWER:** This paragraph is a characterization of the Complaint to which no answer is required. In the event an answer is required, Defendants deny the allegations of this paragraph.

## PARTIES

3. LFS is a corporation organized under the laws of the State of Delaware with its principal place of business in Chicago, Illinois. LFS is engaged in the business of providing financial and investment services, primarily to existing customers of LaSalle Bank National Association, an indirect parent corporation of LFS, and its affiliated banks, including, but not limited to, LaSalle Bank Midwest (the "Bank"). LFS is a broker-dealer registered with FINRA.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and therefore deny the same for lack of knowledge.

4. Defendant Brymer resides at 1305 S. Michigan Avenue, #910, Chicago, Illinois 60605, and is a resident of the State of Illinois. Brymer is registered with FINRA.

**ANSWER:** Defendants admit the allegations of this paragraph.

5. Defendant Swanson resides at 8 W. 57th Street, Westmont, Illinois 60559, and is a resident of the State of Illinois. Swanson is registered with FINRA.

**ANSWER:** Defendants admit the allegations of this paragraph.

6. Defendant Kibiloski resides at 205 N. West Street, Naperville, Illinois 60540 and is a resident of the State of Illinois. Kibiloski is registered with FINRA.

**ANSWER:** Defendants admit the allegations of this paragraph.

## JURISDICTION

7. Jurisdiction over LFS's claim against Defendants under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count 1) is conferred upon this Court by 28 U.S.C. § 1331.

Supplemental jurisdiction over LFS's remaining claims (Counts 2-9) is conferred upon this Court by 28 U.S.C. § 1367.

      **ANSWER:**  Defendants admit the allegations of this paragraph.

## VENUE

8.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because each of the Defendants resides in the Northern District of Illinois and because the events giving rise to LFS's claims occurred in the Northern District of Illinois.

      **ANSWER:**  Defendants admit the allegations of this paragraph.

## GENERAL ALLEGATIONS

**A.**     **Defendants Were Employed by LFS and Were Bound By Confidentiality and Non-Solicitation Obligations**

9.  Defendant Brymer was employed by LFS from March 31, 2003 to December 7, 2007 as a Financial Consultant, servicing LFS clients out of LFS's Naperville office in Naperville, Illinois.

      **ANSWER:**  Defendants admit the allegations of this paragraph.

10.  Defendant Swanson was employed by LFS from March 18, 2002 to December 7, 2007 as a Financial Consultant, servicing LFS clients out of LFS's Naperville Office in Naperville, Illinois.

      **ANSWER:**  Defendants admit the allegations of this paragraph.

11.  Defendant Kibiloski was employed by LFS from August 1, 2005 to December 7, 2007 as a Financial Consultant, servicing LFS clients out of LFS's Naperville office in Naperville, Illinois.

      **ANSWER:**  Defendants admit the allegations of this paragraph, except

Defendants deny the allegation that Kibiloski began his employment with LFS on August 1,

2005.

12.  As Financial Consultants, Defendants' responsibilities included responding to customer requests for security transactions, and selling brokerage services to new and existing customers of the Bank.  The Defendants worked together as a team for sales, marketing, and administrative purposes.  Kibiloski, for example, was principally responsible for networking and developing the team's client base.  Similarly, Brymer was responsible for the financial planning

of the team's high net-worth clients. Swanson was primarily responsible for administrative and sales support.

**ANSWER:** Defendants admit the allegations of this paragraph.

13. Defendants each are registered representatives, registered with FINRA, and are subject to its rules and regulations.

**ANSWER:** Defendants admit the allegations of this paragraph.

14. In conducting its business, LFS relies upon highly confidential information concerning its business operations and its customers, including, but not limited to, the names, addresses, social security numbers, phone numbers, financial statements, investment objectives, investment history, securities holdings, trading histories, incomes, and net worth of LFS's customers, and information concerning LFS's business, such as profits, margins, costs, and marketing strategies (collectively, "Confidential Information").

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations of this paragraph and therefore deny the same for lack

of knowledge.

15. LFS has implemented procedures to maintain the secrecy of its Confidential Information including, but not limited to, keeping the information in locked file cabinets, locking the areas where the information is kept, using video surveillance, password protecting electronic data, and limiting dissemination of the information to those LFS employees with a need to know the information.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations of this paragraph and therefore deny the same for lack

of knowledge.

16. LFS's Confidential Information pertaining to its customers is particularly valuable. It has taken LFS years to develop the trust and goodwill necessary to attract and retain its customers. LFS engages in research to determine what its customers want from LFS in terms of products, brokerage features, and customer service. LFS also engages in efforts to determine what features, activities, and efforts increase the probability that LFS's brokerage customers will keep their accounts with LFS. Because of these and other efforts, LFS customers tend to be long-term customers who value the continuity of their relationship with LFS and the Bank.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and therefore deny the same for lack of knowledge.

17.  When hired by LFS, each of the Defendants signed a Financial Consultant Agreement, in which he agreed, among other things, that:

4.     Confidentiality

(a)     During your employment with AAFS[1], you have had or will have access to confidential information concerning AAFS's business and its customers, including but not limited to information concerning the identities, addresses, telephone numbers, account numbers, personal information, financial information, and transactions of customers, as well as AAFS's marketing strategies and plans, goals, business methods, business prospects, computer software, research techniques and results, and other information that would be of value to competitors if they obtained this information (collectively, "Confidential Information").  You agree that AAFS has undertaken reasonable measures to maintain the secrecy of its Confidential Information and that during and after your employment you will take all reasonable steps necessary to maintain the information's secrecy, including ensuring that the Confidential Information is not disclosed and is maintained in a secure environment where it is protected from theft or inadvertent disclosure.

(b)     You further agree not to, directly or indirectly, use or disclose any Confidential Information, either during or following the termination of your employment, except to the limited extent necessary to perform your job duties for AAFS, including only disclosing Confidential Information to other AAFS employees who have a "need to know" this information.  These restrictions apply regardless of whether the Confidential Information is in printed, written, or electronic form, retained within your memory, or is compiled or created by you and regardless of when or how you learned the Confidential Information.  These restrictions also apply to any use or disclosure, whether it is by verbal, written, electronic, or other means.  You also agree that you will immediately inform your supervisor and your State Sales Manager of any unauthorized access, use or disclosure of AAFS' Confidential Information.

(c)     Upon demand or the termination of this Agreement, you shall return all Confidential Information in whatever form is [sic] may

---

[1]     ABN AMRO Financial Services, Inc., or "AAFS," is the predecessor-in-interest to LFS.

exist, as well as any documents and data created or compiled by you containing[,] that contains, is based upon, or derived from any Confidential Information, regardless of the source, location, or media on which this information is kept.  In addition, you agree to not create any documents or data that contains, is derived from, or based upon Confidential Information after the termination of this Agreement.

**ANSWER:**  Defendant Brymer admits that he signed the Financial Consulting Agreement attached as Exhibit A to the Complaint.  The remaining Defendants do not recall signing such a Financial Consulting Agreement and therefore deny the allegations of this paragraph.

18.  In addition, the employment of all of LFS's employees is governed by the LFS Registered Representative Compliance Manual (attached as Exhibit B), which requires employees to, among other things, maintain the confidentiality of LFS's Confidential Information.  The agreement of LFS's employees to abide by these terms of confidentiality is a condition of employment.

**ANSWER:**  Defendants admit that the LFS Registered Representative Compliance Manual dated November 1, 2006, is attached as Exhibit B to the Complaint but deny the remaining allegations of this paragraph.

19.  The LFS Registered Representative Compliance Manual provides:

It is the policy of the Firm that all proprietary, customer, trading, and account information acquired by the Firm or any of its employees is to be maintained in strictest confidence.

* * * *

A.    Confidential Information

In the normal course of business, employees may be given or may acquire information about the business of the Firm, its customers, or its affiliates that is not available to the general public.  This information is deemed to be confidential and may include trading and investment details and customer income or financial data.  All employees are responsible for respecting and maintaining the confidential nature of information that concerns the business of the Firm, its customers, and its affiliates.

Whether orally or in writing, confidential information may only be disclosed within the Firm or to employees of the Firm's affiliates who need to know the information to perform their job functions. In particular, specific customer transactions or orders are not to be discussed with bankers or other employees of the Firm's affiliates unless there is a legitimate business need to do so.

All employees are to exercise reasonable care in how and where they discuss, document, and store the confidential information that relates to the business activities of the Firm and its customers. Confidential business and customer information should not be disclosed outside of the Firm and its affiliates except for legitimate and legal business reasons or as required by law. Employees should be discreet about discussing or exposing written confidential information in public areas such as elevators, halls, and restaurants. Documentation and files of a confidential nature, such as order tickets, customer account opening forms, monthly statements, and memoranda are to be maintained in a secure place where their confidentiality will not be compromised by people unaffiliated with the Firm.

(Exhibit B at p. 10).

**ANSWER:** Defendants admit the allegations of this paragraph.

20. The Compliance Manual also prohibited the Defendants from deleting or destroying any of LFS's records or documents:

Employees are specifically prohibited from the following:

• Forging signatures of customers or others; or altering, falsifying or destroying customer or Firm records or documents.

(Exhibit B at p. 25).

**ANSWER:** Defendants admit that the quoted language is contained in the

Compliance Manual but deny the remaining allegations of this paragraph.

21. Defendants also agreed to abide by LFS's Standards of Conduct, which provide in relevant part:

IV.    CONFIDENTIAL INFORMATION AND CHINESE WALLS

In the normal course of business, employees may be given or may acquire information about the business of the Company, its subsidiaries, affiliates,

customers, or employees that is not available to the general public.  This information is confidential and may include, but is not limited to: financial data, business plans, strategies concerning specific lending or trading decisions, computer software programs or code, employee, and client information including social securities [sic] numbers, restricted list information, investment decisions, or research opinions.  All employees are responsible for respecting and maintaining the confidential nature of such information.  Clients conduct business with the Company with the expectation that the Company will maintain in absolute confidence all information provided to it regarding them and their business.  The Company and its employees must meet their responsibility for confidentiality throughout the relationship with the client and even after a transaction or relationship has ended.

The duty to protect the confidence of the Company, its subsidiaries, affiliates, customers, and employees includes avoiding intentional disclosures, as well as taking care to avoid accidental disclosures.  All employees are to exercise extreme care in how and where they discuss, document and store the confidential information that relates to the business activities of the Company, its customers and its employees.

Whether orally or in writing, confidential customer, Company or employee information only may be disclosed within the Company to those who need to know the information to perform their job functions.  Confidential business, customer and employee information is not to be disclosed outside of the Company except for legitimate business reasons or as required by law.  Heightened awareness of identify theft/fraud should be a concern to all employees.

* * * *

## XV. PROHIBITION OF THE USE OF INFORMATION AFTER LEAVING THE COMPANY

If you leave the Company for any reason, you may not take and must return all Company property received by you in the course of your employment. This includes but is not limited to computer, printer, fax machine, pager or telephone, and all paper and electronic Company documents and data including memoranda, customer information, financial reports, personnel information, and all copies thereof. All such items, documents and data are property of the Company. In addition, you may not divulge any confidential information obtained by you during your employment regarding the Company's business to a new or prospective employer. This includes, but is not limited to, any proprietary information or trade secrets such as customer lists, financial information, business plans, personnel information, and any other

information not publicly available.

(Exhibit C at pp. 4-5, 11)

      **ANSWER:**  Defendants admit that the quoted language, except the last quoted

sentence, is contained in the Standards of Conduct, dated May 2007, attached as Exhibit C to the

Complaint, but Defendants deny the remaining allegations of this paragraph.

      22.  In addition to agreeing to maintain the confidentiality of LFS's Confidential
Information, trade secrets, and other customer information, the Defendants further agreed in each
of their respective Agreements, that they would not solicit securities business from any
customers of LFS on behalf of any other organization, or assist anyone else in doing so, during
their employment by LFS, or for one year thereafter. Specifically, Defendants agreed as follows:

**5. Nonsolicitation.**

(a)     As part of your AAFS job duties, you have been or will be
responsible for obtaining, maintaining, and developing business
relationships in a professional and business-like manner with actual and
prospective AAFS customers, including but not limited to brokerage
customers, annuity customers serviced through insurance companies, and
customers of AAFS affiliated banks that you learn of as a result of your
employment (collectively, "Customers"). You agree that your
relationships with Customers are undertaken solely as an agent of AAFS,
on whose behalf the relationships are maintained. AAFS at all times
retains the right, exercised at its sole discretion, to reassign any account or
customer to any employee.

(b)     Accordingly, you agree that for a period of one (1) year after the
termination of your employment, regardless of the reason for termination, you
will not, directly or indirectly, and whether as an employee, agent,
representative, owner, contractor, partner, sole-proprietor, investor, consultant, or
in any other capacity, do any of the following: (i) solicit, canvass, or accept
orders or business of any kind relating to the products and/or services sold
by, or that are substantially similar to those sold by, AAFS from any
Customer that you serviced or learned of during your employment; (ii)
induce or attempt to induce any Customer to patronize any business that is
competitive with AAFS; (iii) request or advise any Customer to withdraw, curtail,
or cancel the Customer's actual or prospective business with AAFS; or (iv)
otherwise initiate any securities or insurance related business contact, written
or verbal, with any Customer. These restrictions shall not apply to those
Customers agreed to by you and your State Sales Manager (provided that the
names of these Customers are set forth in a writing signed by the State Sales
Manager that directly refers to this agreement) or to Customers that are directly
related to you, provided that you do not use any Confidential

Information in servicing these Customers after the termination of your employment. You further agree that it is critical to AAFS's continued business and a reasonable restriction on your future employment that you not interfere with AAFS's Customer relationships upon the termination of your employment.

(Exhibit A at § 5)

       **ANSWER:**  Defendant Brymer admits that he signed the Financial Consulting

Agreement attached as Exhibit A to the Complaint, but Defendants deny the remaining

allegations of this paragraph.

       23.  During their employment and for the limited purpose of performing their job duties as Financial Consultants, Defendants were provided access to Confidential Information relating to the customers and accounts that they managed for LFS, as well as limited Confidential Information relating to other LFS customers and Confidential Information concerning LFS's business. This Confidential Information was provided to the Defendants with the trust and confidence that they would abide by their duties under LFS's written policies, their written agreements, and the law, to keep this information confidential and that they would not use or disclose any of this Confidential Information, except to the limited extent necessary to perform their job duties.

       **ANSWER:**  Defendants admit that they were provided with certain confidential

information during their employment with LFS but deny the remaining allegations of this

paragraph.

       24.  To assist in the performance of their job duties, Defendants were also allowed access to paper documents containing highly confidential customer and financial information.

       **ANSWER:**  Defendants admit that they were provided with certain confidential

information during their employment with LFS but deny the remaining allegations of this

paragraph.

       25.  In consideration for the work performed by Brymer and his obligation to maintain the secrecy of LFS Confidential Information, among other obligations, LFS paid Brymer generous compensation, including commissions, amounting to $163,139.66 for the year 2005, $168,296.16 for the year 2006, and $196,714.49 in 2007 through his termination at LFS.

**ANSWER:** Defendant Brymer admits the allegations of this paragraph relating

to the amount of his compensation but denies the remaining allegations of this paragraph. The

remaining Defendants lack knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations of this paragraph and therefore deny the same for lack of knowledge.

26.  In consideration for the work performed by Swanson and his obligation to maintain the secrecy of LFS Confidential Information, among other obligations, LFS paid Swanson generous compensation, including commissions, amounting to $44,918.30 for the year 2005, $59,067.10 for the year 2006, and $69,705.44 in 2007 through his termination at LFS.

**ANSWER:** Defendant Swanson admits the allegations of this paragraph relating

to the amount of his compensation but denies the remaining allegations of this paragraph. The

remaining Defendants lack knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations of this paragraph and therefore deny the same for lack of knowledge.

27.  In consideration for the work performed by Kibiloski and his obligation to maintain the secrecy of LFS Confidential Information, among other obligations, LFS paid Kibiloski generous compensation, including commissions, amounting to $26,500.00 for the fraction the year 2005 for which Kibiloski was employed by LFS, $97,356.94 for the year 2006, and $146,801.49 in 2007 through his termination at LFS.

**ANSWER:** Defendant Kibiloski admits the allegations of this paragraph relating

to the amount of his compensation but denies the remaining allegations of this paragraph. The

remaining Defendants lack knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations of this paragraph and therefore deny the same for lack of knowledge.

28.  In addition to commissions and bonuses, LFS provided Defendants with operational and sales systems, computer resources, sales assistance, and other support. LFS also provided Defendants with customers and customer leads, referrals, assignments, and sales advantages resulting from LFS's and LaSalle Bank's goodwill, reputation, and name recognition in the securities and banking industries.

**ANSWER:** Defendants admit the allegations of this paragraph, except that

Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of

the allegation that support provided by LFS resulted from LFS' and LaSalle Bank's good will,

reputation, and name recognition and therefore deny those allegations for lack of knowledge.

       29.  On December 7, 2007, without any prior notice, Brymer announced his resignation.

       **ANSWER:**  Defendants admit the allegations of this paragraph.

       30.  On December 7, 2007, without any prior notice, Swanson announced his resignation.

       **ANSWER:**  Defendants admit the allegations of this paragraph.

       31.  On December 7, 2007, without any prior notice, Kibiloski announced his resignation.

       **ANSWER:**  Defendants admit the allegations of this paragraph.

       32.  On information and belief, all of Defendants immediately commenced their employment with their new broker-dealer.

       **ANSWER:**  Defendants admit that they commenced their employment with their

new employer on December 10, 2007, but deny the remaining allegations of this paragraph.

**B.**     **The Defendants Breached Their Confidentiality and Non-Solicitation Obligations, and Deleted Electronic Information From LFS's Computers in an Attempt to Cover-Up Their Misdeeds**

       33.  Notwithstanding their clear contractual, professional, ethical, legal, and other duties, the Defendants have taken Confidential Information from LFS.  They did so in a systematic fashion in the months, weeks, and days leading up to their departure from LFS.

       **ANSWER:**  Defendants deny the allegations of this paragraph.

       34.  During that time, Defendants copied numerous electronic files containing LFS's Confidential Information. In addition, during that time, the Defendants requested and obtained from various insurance carriers, lists of the LFS customers who purchased and held annuities issued by those carriers. This was information that the Defendants could have accessed from LFS; however, their access of this information would have been recorded by LFS's computer systems and generated an automatic alert that would have been sent to the Defendants' supervisor. Defendants knew about this security feature and attempted to subvert it by accessing the information from the insurance carriers instead of directly from the LFS computer system. Defendants also were aware that their access to this information would be denied after they resigned from LFS because they knew

that, in accord with LFS's policies, the passwords that permitted them access to this information from insurance carriers would be immediately deactivated upon their resignation.

      **ANSWER:** Defendants deny the allegations of this paragraph.

      35.  In the days leading up to Defendants' departure from LFS, and indeed on the afternoon of their final day at LFS, Defendants repeatedly accessed and reviewed LFS's confidential customer lists.

      **ANSWER:** Defendants deny the allegations of this paragraph.

      36.  On numerous occasions during the weeks leading up to their departure from LFS, Defendants connected portable electronic media storage devices, such as flash drives and Apple iPods, to their computers at LFS. The Defendants had no reason related to their duties as LFS financial consultants to connect such devices to their LFS computers and likely did so solely as a means to download and store LFS's confidential information.

      **ANSWER:** Defendants deny the allegations of this paragraph.

      37.    Defendants also illicitly copied LFS's Confidential Information onto CD ROMs.  For example, on November 20, 2007 — the day after Kibiloski was offered his position at his new employer — he installed the Roxio CD-burning application onto his LFS computer. There is no legitimate reason why Kibiloski, the most tech savvy of the three Defendants, would have needed such software to carry out his duties and responsibilities as a Financial Consultant at LFS. Rather he installed it for the purpose of copying and taking LFS's Confidential Information.

      **ANSWER:** Defendant Kibiloski admits that he attempted to install Roxio CD-burning software on to his LFS computer in November 2007, but denies the remaining allegations of this paragraph.  The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and therefore deny the same for lack of knowledge.

      38.  LFS has demanded the immediate return of its Confidential Information from Defendants, but none of the Defendants have responded to LFS's demand.  (*See* LFS Letters to Defendants attached as Group Exhibit D).

      **ANSWER:** Defendants admit that they received the letters attached as Exhibit D to the Complaint but deny the remaining allegations of this paragraph.

      39.  The Defendants also have used LFS's Confidential Information for marketing purposes. For example, Defendants accessed internet-based marketing organizations constantcontact.com and zedo.com on numerous occasions in the days and weeks leading up to their departure from LFS.

**ANSWER:** Defendants deny the allegations of this paragraph.

40. Through their numerous contacts, it is likely that Defendants provided LFS's confidential customer information to constantcontact.com and zedo.com to facilitate a mass-mailing solicitation or other advertising and marketing campaign directed to LFS's customers. There is no legitimate reason why Defendants would have accessed these sites in carrying out their duties and responsibilities as Financial Consultants for LFS.

**ANSWER:** Defendants deny the allegations of this paragraph.

41. Defendants also are actively soliciting LFS's customers to move their accounts away from LFS to Defendants' new employer, a direct competitor of LFS. For example, LFS received a telephone call from an LFS customer who was concerned because he received a telephone call from Defendants in which they referenced his IRA account held at LFS and solicited him to transfer that account to Defendants' new broker-dealer. Defendants' access to that customer's account information could only have come from LFS's Confidential Information, which Defendants illicitly retained upon their departure from LFS.

ANSWER: Defendants lack knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations concerning what a customer told LFS and therefore

deny the same for lack of knowledge. Defendants deny the remaining allegations of this

paragraph.

42. Defendants also sent a letter soliciting customers to change their broker-dealer of record from LFS to Defendants' new employer with respect to annuities held by the customers. Defendants included with the letter a form for customers to fill out and sign to accomplish the change. If a customer fills out and submits such a form and thereby switches broker-dealers from LFS to Defendants' new employer, then the commission trails paid by the annuity company would be paid to Defendants and their new employer and not to LFS. Defendants could not have made this solicitation to LFS's annuity customers without using LFS's Confidential Information that they illicitly took when they left LFS.

**ANSWER:** Defendants deny the allegations of this paragraph.

43. LFS also has received telephone calls from other customers reporting that they had been contacted by the Defendants.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations of this paragraph, and therefore deny the same for lack

of knowledge.

44. None of the Defendants had a significant number of customers when they began their employment with LFS. Defendants' customers at LFS were primarily referred to them by the Bank.

**ANSWER:** Defendants deny the allegations of this paragraph.

45. Using LFS's Confidential Information that they illicitly retained upon their resignation from LFS, Defendants have solicited, and absent injunctive relief from the Court, upon information and belief, will continue to solicit, other LFS customers that Defendants may or may not have serviced while they were employed by LFS.

**ANSWER:** Defendants deny the allegations of this paragraph.

46. Thus, rather than abide by their contractual agreements and other applicable duties, and despite federal and state laws protecting the privacy of financial information, Defendants engaged in a scheme to reproduce and use the Confidential Information to steal LFS's customers for their own benefit and the benefit of their new employer.

**ANSWER:** Defendants deny the allegations of this paragraph.

47. LFS's efforts to determine the full scope of Defendants' misconduct have been hindered by Defendants' unauthorized and intentional destruction and deletion of files and information from LFS's computers. Indeed, LFS's forensic investigation has determined that Defendants went so far as to use a computer application to "wipe" or overwrite data on LFS's computers in order to hide their actions. Defendants' deletions and overwriting of data was a deliberate attempt by Defendants to hide their unauthorized copying and misappropriation of LFS's Confidential Information.

**ANSWER:** Defendants deny the allegations of this paragraph.

**C.     The Defendants' Conduct Has Caused and**
**        Continues to Cause LFS Irreparable Injury**

48. The securities brokerage industry is a highly competitive industry, and Defendants' new employer is a direct competitor of LFS.

**ANSWER:** Defendants deny the allegations of this paragraph.

49. Tellers, personal bankers, commercial banking officers, and trust personnel referred customers to Defendants with the understanding that Defendants would enhance and protect the Bank's relationships with those customers and the confidentiality of the information provided to it.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph, and therefore deny the same for lack of knowledge.

50.   Maintaining the confidentiality and secrecy of LFS's trade secret and confidential customer information is crucial if LFS and the Bank are to maintain the trust and confidence of their customers. These customers fully expect that all private financial and personal information provided to LFS and the Bank will be kept strictly confidential and will not be unnecessarily disclosed to any other person or entity, and LFS and the Bank provide their customers with assurances to that effect. The disclosure of this information will destroy the confidence and trust LFS and the Bank and their customers that they have built over time, to LFS's and the Bank's grave and irreparable harm.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph, and therefore deny the same for lack of knowledge.

51.   LFS diligently maintains the secrecy and confidentiality of its trade secret and Confidential Information in order to maintain its competitive advantage over competitors who do not have this information. If this information becomes known to a competitor, it would allow a competitor to target LFS's most lucrative and productive accounts and provide the competitor with an unfair competitive advantage without the investment of years of effort and resources made by LFS in obtaining and retaining the customer.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph, and therefore deny the same for lack of knowledge.

52.   Defendants' actions in converting the Confidential Information detailed above create immediate and irreparable harm not only to LFS, but to the Bank as well.

**ANSWER:** Defendants deny the allegations of this paragraph.

53.   Defendants' conduct was, and is, in furtherance of a scheme to obtain and convert to their own use and gain the Confidential Information of LFS, including the names, addresses and other customer information and records used to conduct business at LFS, the client lists and contacts of LFS, the

trade secrets of LFS, and the goodwill generated, directly and indirectly, by the Defendants' association with LFS.

> **ANSWER:** Defendants deny the allegations of this paragraph.

54.   Unless Defendants are restrained from using any of the information they have taken from LFS, LFS will suffer immediate and irreparable harm. Defendants' unlawful acquisition of LFS's confidential customer information will destroy the benefits of all of the resources that LFS has devoted in developing this information and its customer trust and goodwill, including years of marketing and nurturing customer relationships. No price tag could ever be placed on the destruction of these benefits that will take place if Defendants are not restrained from using the misappropriated information.

> **ANSWER:** Defendants deny the allegations of this paragraph.

55.   Specifically, LFS will suffer irreparable harm through the disclosure of its trade secrets, customer lists, and customer account information, as well as the loss of confidentiality of clients' records and financial dealings. LFS will also be irreparably harmed by the loss of trust and confidence of its customers, loss of goodwill, and loss of business reputation. The resultant present and future economic loss to LFS and the Bank is and will always be impossible to fully ascertain in monetary terms.

> **ANSWER:** Defendants deny the allegations of this paragraph.

56.   Defendants' conduct has caused, and will continue to cause, irreparable harm to LFS as follows:

> A)      Deletion of LFS's Confidential Information in the Defendants' possession, custody, or control;

> B)      Disclosure of LFS's trade secrets to third parties and potentially unlimited distribution of those trade secrets through electronic copying and transfer of the information;

> C)      Loss of confidentiality of customer's records and financial dealings; loss of confidence and trust of clients, and loss of customer goodwill;

> D)      Present economic loss which is unascertainable at this time, and future economic loss, which is incalculable; and

Injunctive relief is necessary to ensure LFS's ability to comply with its affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic information as required by 15 U.S.C. §6801 *et seq.* and Regulation S-P promulgated thereunder (17 C.F.R. pt. 248).

> **ANSWER:** Defendants deny the allegations of this paragraph.

57.  LFS has no adequate remedy at law for these injuries. Injunctive relief is necessary to forestall continuing injury and to insure LFS's ability to comply with its affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic information as required by 15 U.S.C. § 6801 *et seq.* and Regulation S-P promulgated there under (17 C.F.R. pt. 248).

**ANSWER:** Defendants deny the allegations of this paragraph.

58.  Defendants have acknowledged LFS's irreparable injury and right to an injunction upon breach of the confidentiality and non-solicitation clauses of their agreements. Specifically, Defendants each agreed, as follows:

> 6.        Injunctive Relief. You acknowledge that should you violate any provisions of Section 4 [confidentiality] or Section 5 [non-solicitation], AAFS will suffer substantial harm and not have adequate remedy at law. Accordingly, you agree that: (a) AAFS may seek injunctive relief to restrain any such violation, whether threatened or actual; (b) such equitable relief may be sought in any court of competent jurisdiction, regardless of whether other issues (e.g., damages) are subject to arbitration; (c) any requirement for AAFS to post a bond in seeking such equitable relief is waived. This equitable remedy is cumulative and in addition to any other remedies available to AAFS under the law, including the right to obtain damages.

(Exhibit A at § 6)

**ANSWER:** Defendants deny the allegations of this paragraph.

59.  Defendants also each agreed to pay for LFS's attorney fees associated with enforcing the terms of the Financial Consultant Agreements:

> 7        Attorneys Fees & Costs. In the event AAFS brings suit to enforce the terms of this Agreement, you agree to pay any fees or costs (including any reasonable attorneys' fees and arbitration forum fees) AAFS incurs in enforcing the terms of the Agreement.

(Exhibit A at § 7)

**ANSWER:** Defendants deny the allegations of this paragraph.

## COUNT I

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

### (Against All Defendants)

60. LFS incorporates by reference the allegations contained in Paragraphs 1 through 59 of the Complaint, as if fully set forth herein.

**ANSWER:** Defendants incorporate their answers to Paragraph Nos. 1 through 59 as their answer to this paragraph.

61. Without LFS's authorization, the Defendants intentionally accessed a computer used for interstate commerce in order to take LFS's confidential information, including its customer lists. Defendants transferred that confidential information to small, portable electronic storage devices such as iPods and flash or thumb drives. Defendants also transferred that information to CD ROMs and possibly other media for storing electronic information.

**ANSWER:** Defendants deny the allegations of this paragraph.

62. In an attempt to hide their unauthorized copying and retention of LFS's confidential information, Defendants also intentionally deleted files and records maintained on LFS's computers prior to their resignation from LFS.

**ANSWER:** Defendants deny the allegations of this paragraph.

63. As a result of the Defendants' unauthorized access and deletions, LFS has suffered losses of at least $5,000 in value within a one year period, including the cost of investigating the offense, the cost of responding to the offense, and lost revenues.

**ANSWER:** Defendants deny the allegations of this paragraph.

64. Under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), LFS is entitled to injunctive relief enjoining the Defendants, and anyone to whom they have divulged LFS's information, from making any use of LFS's information and ordering Defendants, and anyone to whom they have divulged LFS's information, to return to LFS all documents and things containing or embodying the information. LFS also is entitled to enjoin Defendants from further deletions of LFS's confidential information in Defendants' custody, possession, or control.

**ANSWER:** Defendants deny the allegations of this paragraph.

65. Also pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, LFS is further entitled to recover monetary damages against the Defendants for the losses LFS has sustained, and the unjust enrichment obtained by the Defendants, in an amount to be determined in arbitration.

**ANSWER:** Defendants deny the allegations of this paragraph.

## COUNT II

## BREACH OF CONTRACT

**(Against All Defendants)**

66. LFS incorporates by reference the allegations contained in Paragraphs 1 through 59 of the Complaint, as if fully set forth herein

**ANSWER:** Defendants incorporate their answers to Paragraph Nos. 1 through 59 as their answer to this paragraph.

67. The obligations to not engage in the unauthorized use and/or disclosure of LFS's Confidential Information, as set forth in LFS's Registered Representative Compliance Manual, together with Defendants agreements described above are part of Defendants' contract for employment with LFS.

**ANSWER:** Defendants deny the allegations of this paragraph.

68. The prohibition against soliciting clients of LFS as set forth in the agreements described above is part of the Defendants' contract for employment with LFS.

**ANSWER:** Defendants deny the allegations of this paragraph.

69. The Defendants have breached their contractual obligations to maintain the confidentiality of LFS's Confidential Information by engaging in the unauthorized reproduction, use and disclosure of LFS's Confidential Information to their new employer or other unknown third parties.

**ANSWER:** Defendants deny the allegations of this paragraph

.

70. The Defendants have breached their contractual obligations to refrain from soliciting customers of LFS by contacting those customers and encouraging/assisting them to transfer their accounts from LFS to Defendants' new employer and LFS's competitor.

**ANSWER:** Defendants deny the allegations of this paragraph.

71. LFS has complied with its obligations under the agreements.

**ANSWER:** Defendants deny the allegations of this paragraph.

72. As a result of the Defendants' breach of their contractual duties, LFS has suffered and will continue to suffer irreparable injury, as well as damages.

**ANSWER:** Defendants deny the allegations of this paragraph.

**COUNT III**

**VIOLATIONS OF ILLINOIS' UNIFORM TRADE SECRETS ACT**

**(Against All Defendants)**

73.  LFS incorporates by reference the allegations contained in Paragraphs 1 through 59 of the Complaint, as if sully set forth herein.

**ANSWER:**  Defendants incorporate their answers to Paragraph Nos. 1 through 59 as their answer to this paragraph.

74.  The Defendants were only provided access to LFS's Confidential Information in the trust and confidence that they would maintain the secrecy of that information and abide by LFS's policies and procedures, and federal and state law, to maintain the secrecy of that information.

**ANSWER:**  Defendants deny the allegations of this paragraph.

75.  The Defendants are using LFS's Confidential Information to LFS's detriment and irreparable harm.

**ANSWER:**  Defendants deny the allegations of this paragraph.

76.  LFS's Confidential Information derives actual or potential economic value from not being generally known to and not being readily ascertainable by proper means to other persons and entities who can obtain economic value from its disclosure and use.

**ANSWER:**  Defendants deny the allegations of this paragraph.

77.  LFS takes reasonable steps to protect the secrecy and confidentiality of its Confidential Information, including without limitation, maintaining the information in locked files and locked buildings, using video surveillance, using computer passwords, limiting dissemination to those employees with a need to know the information, promulgating employment policies mandating the confidentiality and secrecy of the information and entering into agreements with its employees to maintain the secrecy of this information.

**ANSWER:**  Defendants deny the allegations of this paragraph.

78.  The Defendants have misappropriated LFS's Confidential Information for their business by wrongfully obtaining the information in violation of the law and their contractual duties owed to LFS.

**ANSWER:**  Defendants deny the allegations of this paragraph.

79.  The Defendants acted with actual knowledge that LFS's Confidential Information was being misappropriated by improper means and in violation of their duties owed to LFS.

**ANSWER:**  Defendants deny the allegations of this paragraph.

80.  The misappropriation of LFS's Confidential Information was willful and malicious.

**ANSWER:**  Defendants deny the allegations of this paragraph.

81.  Pursuant to 765 ILCS 1065/3(a), this Court may enjoin the actual or threatened misappropriation of LFS's Confidential Information by the Defendants.

**ANSWER:**  Defendants deny the allegations of this paragraph.

82.  LFS has no adequate remedy at law for Defendants' actions since the damages LFS has suffered and will continue to suffer as a result of the use and divulgence of its Confidential Information are incapable of exact proof.

**ANSWER:**  Defendants deny the allegations of this paragraph.

83.  Unless the Defendants and those acting in concert with them are preliminarily and permanently enjoined from misappropriating LFS's Confidential Information, the Defendants will continue their use and misappropriation of LFS's Confidential Information and will continue to cause LFS irreparable harm. Accordingly, a preliminary and permanent injunction enjoining Defendants and those acting in concert with them is a necessary remedy if LFS is to obtain meaningful relief.

**ANSWER:**  Defendants deny the allegations of this paragraph.

## COUNT IV

## <u>BREACH OF FIDUCIARY DUTIES</u>

### (Against All Defendants)

84.  LFS incorporates by reference the allegations contained in Paragraphs 1 through 59 of the Complaint, as if fully set forth herein.

**ANSWER:**  Defendants incorporate their answers to Paragraph Nos. 1 through 59 as their answer to this paragraph.

85.  Because the Defendants were Financial Consultants employed by LFS, they owed the following fiduciary duties to LFS:

A)      A duty not to utilize or disclose LFS's Confidential Information for their own benefit or to the detriment of LFS;

B)      A duty not to harm LFS's business by using and/or disclosing LFS's Confidential Information;

C)     A duty not to compete with LFS prior to the termination of their employment;

D)     A duty not to misuse confidential customer information except for the express purpose for which the information was provided to LFS; and

E)     A duty of good faith and loyalty to LFS.

**ANSWER:**  Defendants deny the allegations of this paragraph.

86.  The Defendants have breached each and every one of the foregoing duties:

A)     By using and disclosing LFS's Confidential Information for their own benefit and the benefit of Defendants' new employer and to the detriment of LFS;

B)     By breaching their duties to LFS and the trust in which customers and LFS placed in them by engaging in the unauthorized disclosure and use of the Confidential Information;

C)     By using LFS's Confidential Information to compete and/or prepare to compete with LFS prior to the termination of their employment with LFS; and

D)     By transmitting LFS's Confidential Information for the express purpose of harming LFS.

**ANSWER:**  Defendants deny the allegations of this paragraph.

87.  As a result of the Defendants' breach of their fiduciary duties owed to LFS, LFS has suffered and will continue to suffer irreparable injury and damages.

**ANSWER:**  Defendants deny the allegations of this paragraph.

## COUNT V

## TORTIOUS INTERFERENCE WITH EXISTING BUSINESS RELATIONS

### (Against All Defendants)

88.  LFS incorporates by reference the allegations contained in Paragraphs 1 through 59 of the Complaint, as if fully set forth herein.

**ANSWER:**  Defendants incorporate their answers to Paragraph Nos. 1 through 59 as their answer to this paragraph.

89.  There now exist, and at all relevant times have existed, actual business relations between LFS and its customers.

**ANSWER:**  Defendants admit the allegations of this paragraph.

90.  The Defendants have been, at all relevant times, aware of the existing business relations between LFS and its customers.

**ANSWER:**  Defendants admit that they have been aware of some of the business relationships between LFS and its customers but deny the remaining allegations of this paragraph.

`     91.  The Defendants' actions in soliciting LFS's customers through the use of Confidential Information misappropriated by the Defendants are intentional and unjustified attempts to get LFS customers to breach their agreements with LFS.

**ANSWER:**  Defendants deny the allegations of this paragraph.

92.  As a proximate result of Defendants' interference, LFS has been damaged in an amount it cannot yet ascertain, and which includes irreparable harm.

**ANSWER:**  Defendants deny the allegations of this paragraph.

### COUNT VI

### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

### (Against All Defendants)

93.  LFS incorporates by reference the allegations contained in Paragraphs 1 through 59 of the Complaint, as if fully set forth herein.

**ANSWER:**  Defendants incorporate their answers to Paragraph Nos. 1 through 59 as their answer to this paragraph.

94.  There now exist, and at all relevant times have existed, prospective business relations between LFS and its customers.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and therefore deny the same for lack of knowledge.

95.  The Defendants, at all relevant times, knew of the prospective business relations between LFS and its customers.

**ANSWER:**  Defendants deny the allegations of this paragraph.

96.  The Defendants' actions to solicit LFS's customers by the misappropriation and use of LFS's customer information constitutes intentional and unjustifiable interference with LFS's prospective business relations, causing a breach and termination of the expectancy of those prospective business relations.

**ANSWER:**  Defendants deny the allegations of this paragraph.

97.  As a proximate result of the Defendants' interference, LFS has incurred damages in an amount it cannot yet ascertain, and which includes irreparable harm.

**ANSWER:**  Defendants deny the allegations of this paragraph.

## COUNT VII

## <u>CONSPIRACY</u>

### (Against All Defendants)

98.  LFS incorporates by reference the allegations contained in Paragraphs 1 through 59 of the Complaint, as if fully set forth herein.

**ANSWER:**  Defendants incorporate their answers to Paragraph Nos. 1 through 59 as their answer to this paragraph.

99.  On information and belief, Defendants agreed to misappropriate and use LFS's Confidential Information.

**ANSWER:**  Defendants deny the allegations of this paragraph.

100.  This concerted action was intended to, among other things, gain a competitive advantage, and to otherwise improperly and unfairly compete with LFS.

**ANSWER:**  Defendants deny the allegations of this paragraph.

101.  The Defendants furthered this conspiracy by using the misappropriated Confidential Information to solicit LFS's customers.

**ANSWER:**  Defendants deny the allegations of this paragraph.

102.  As a consequence of the Defendants' conduct, LFS has suffered damages and will continue to suffer irreparable harm and loss.

**ANSWER:**  Defendants deny the allegations of this paragraph.

## COUNT VIII

## CONVERSION

### (Against All Defendants)

103.  LFS incorporates by reference the allegations contained in Paragraphs 1 through 59 of the Complaint, as if fully set forth herein.

**ANSWER:**  Defendants incorporate their answers to Paragraph Nos. 1 through 59 as their answer to this paragraph.

104.  The Defendants have documents and information that belong to LFS.

**ANSWER:**  Defendants deny the allegations of this paragraph.

105.  LFS has an absolute and unconditional right to immediate possession of these documents and information.

**ANSWER:**  Defendants deny the allegations of this paragraph.

106.  The Defendants have wrongfully and without LFS's authorization, assumed control, dominion and ownership over these documents and information.

**ANSWER:**  Defendants deny the allegations of this paragraph.

107.  Upon learning that the Defendants had possession of these documents and information, LFS made an immediate demand for their return.

**ANSWER:**  Defendants deny the allegations of this paragraph.

108.  The value of the documents or information converted by Defendants is not possible to ascertain with any reasonable degree of certainty, and LFS is entitled to the immediate return of those documents and all compilations and derivations of the information contained in those documents.

**ANSWER:**  Defendants deny the allegations of this paragraph.

109.  As a direct and proximate result of the Defendants' conversion of LFS's property, LFS has suffered, and will continue to suffer, immediate and irreparable injury.

**ANSWER:** Defendants deny the allegations of this paragraph.

110.  Injunctive relief is necessary to insure LFS's ability to comply with its affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic information as required by 15 U.S.C. §6801 *et seq.* and Regulation S-F promulgated thereunder (17 C.F.R. pt. 248).

**ANSWER:** Defendants deny the allegations of this paragraph.

## COUNT IX

### UNFAIR COMPETITION

### (Against All Defendants)

111.  LFS incorporates by reference the allegations contained in Paragraphs 1 through 59 of the Complaint, as if fully set forth herein.

**ANSWER:** Defendants incorporate their answers to Paragraph Nos. 1 through 59 as their answer to this paragraph.

112.  The foregoing conduct of the Defendants and those acting in concert with them constitutes an unfair method of competition.

**ANSWER:** Defendants deny the allegations of this paragraph.

113.  As a consequence of the Defendants' conduct, LFS has suffered damages and will continue to suffer irreparable harm and loss.

**ANSWER:** Defendants deny the allegations of this paragraph.

114.  Defendants deny each and every allegation of the Complaint that is not admitted, denied or otherwise expressly referred to above.

### AFFIRMATIVE DEFENSES

1.  The Complaint fails to state a claim upon which relief can be granted.

2.  The alleged contracts and LFS policies are an unreasonable restraint on trade, against public policy and unenforceable.

3.  The claims asserted herein are subject to mandatory arbitration.

4.  The Complaint is barred in whole or part by waiver, estoppel, consent and ratification.

5.  The Complaint is barred in whole or part by Plaintiff's material breach of contract and other obligations.

WHEREFORE, Defendants request that the Complaint be dismissed.

**Respectfully submitted,**

**DOUGLAS BRYMER,**
**DAVID SWANSON, and**
**RYAN KIBILOSKI**

By:___*/s/ Kevin T. Keating*_____
           One of their Attorneys

Kevin T. Keating (ARDC #6183127)
Keating & Shure, Ltd.
55 W. Monroe Street
Suite 1600
Chicago, IL  60603
(312) 201-8585
6050203.CTP

182840

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Answer to be served upon Stephen Bedel,

Martin Bishop and Thomas Anderson at Foley & Lardner LLP, 321 North Clark Street, Suite

2800, Chicago, IL 60610 by placing a true and correct copy of same in the U.S. Mail, first class

postage prepaid, from 55 West Monroe Street, Chicago, IL 60603, on January 11, 2008.


*/s/ Kevin T. Keating*


Kevin T. Keating (ARDC #6183127)
Keating & Shure, Ltd.
55 W. Monroe Street
Suite 1600
Chicago, IL  60603
(312) 201-8585
6050203.CTP